UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
**MICHAEL A. SMITH** )
)
      **Plaintiff,** )
)
    v. ) Civil Action No. 05-1629 (JDB)
) ECF
**ALBERTO GONZALES, et. al.** )
)
      **Defendants.** )
)
_____)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT AND OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Defendants, Alberto Gonzales, Attorney General of the United States, Harley G. Lappin, Director of the Bureau of Prisons (hereinafter "BOP"), Ray Holt, BOP Southeast Regional Director, and D. B. Drew, FCI Talladega Warden, in their respective official capacities,[1] through and by undersigned counsel, hereby submit this motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and to dismiss Plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P.

---

[1] Plaintiff indicates that he is suing Messers. Gonzalez, Lappin, Flent and Drew in their personal and official capacities. *See* Amended Complaint's Caption. The Complaint is brought under the Administrative Procedures Act ("APA"), seeking injunctive relief only. *See* Compl. ¶ 12. The proper defendant pursuant to the APA is "the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703.
    Further, because injunctive relief, regarding the propriety of the Tobacco Free Initiative in question, may only be pursued against federal defendants in their official capacities, Plaintiff's claim cannot proceed in the fashion he suggests. *See Brancaccio v. Reno*, 964 F. Supp. 1, 2 n.4 (D.D.C. 1997) (plaintiff failed to state a claim against federal officials in their individual capacities where allegations made against them referred to actions that could only be performed by the defendants in their official capacities and where plaintiff requested injunctive relief which could only be performed by defendants in their official capacities). Accordingly, here, no named individual may be deemed a defendant in his individual capacity.

1

12(b)(6); and in opposition to Plaintiff's motion for summary judgment.[2]

Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of Defendants' motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A Statement of Undisputed Material Facts, a Memorandum of Points and Authorities in support of this Motion, and the declaration of a responsible official, are filed herewith.  For the reasons provided in the attached Memorandum of Points and Authorities, there are no material

---

[2] Defendants filed a motion to dismiss Plaintiff's Complaint on February 17, 2006.  *See* USDC Pacer, Document No. 15.  Plaintiff has since filed a response to Defendant's motion to dismiss and an Amended Complaint along with a motion for summary judgment.  USDC Pacer Document Nos. 19, 20 and 21, respectively.  For ease of reference, Defendants, therefore, withdraw their February 2006 motion to dismiss and submit this motion in response to the Amended Complaint and in Opposition to Plaintiff's motion for summary judgment.

facts in dispute and, the facts in this case establish that summary judgment should be granted in Defendants' favor as a matter of law and Plaintiff's Amended Complaint should be dismissed with prejudice.

Dated: August 21, 2006

                                                                                          Respectfully submitted,

                                                                                                        /s/
                                          _____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

                                                                                                        /s/
_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

                                                                                                        /s/
_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-4851

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL A. SMITH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1629 (JDB) |
| ) | ECF |
| ALBERTO GONZALES, et. al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

1. Plaintiff, Michael A. Smith, federal register number 10893-002, is an inmate currently incarcerated at the Federal Correctional Institution in Talladega, Alabama ("FCI Talladega"). Amended Compl. ¶ 1 (USDC Pacer Document No. 20, filed on June 26, 2006) and Declaration of Van Vandivier ¶ 4 (Exh. 1).

2. The Bureau of Prisons ("BOP") tracks inmate's administrative remedy filings on its SENTRY computer system. Exh. 1 ¶ 2.

3. On or about July 28, 2006, Mr. Vandivier, an attorney at the Southeast Regional Office of the BOP checked the computer records to determine whether Plaintiff had exhausted administrative remedies on the issues in this case. Exh. 1 ¶ 4.

4. The BOP records indicated that Plaintiff had not filed for any administrative remedies or appeals. *Id.,* at attachment A.

Respectfully submitted,

/s/
_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


/s/
_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


/s/
_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-4851

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL A. SMITH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1629 (JDB) |
| ) | ECF |
| ALBERTO GONZALES, et. al. ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGEMENT AND TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff, Michael A. Smith, federal register number 10893-002, is an inmate currently incarcerated at the Federal Correctional Institution in Talladega, Alabama ("FCI Talladega"). On or about June 24, 2005, FCI Talladega's Warden Drew announced the impending implementation of a Tobacco Free Initiative ("Initiative" or "TFI"). The TFI was an outgrowth of the BOP Program Statement 1640.04, titled Smoking/No Smoking Areas ("Program Statement") and founded on the cited regulations. (Exh. 2). Plaintiff alleges that the Bureau of Prisons ("BOP") violated the rule making requirements of the Administrative Procedure Act ("APA") by instituting the Initiative, at FCI Talladega, without providing him with the notice required by 5 U.S.C. §§552 and 553. Amended Compl. ¶¶ 1, 4, 5, 7 and 8. In his Amended Complaint, Plaintiff also alleges that Defendants, by implementing the TFI, committed an arbitrary and capricious act, and otherwise acted contrary to the equal protection clause of the

Fifth Amendment to the U.S. Constitution. Amended Compl. ¶¶ 13 and 14.

Plaintiff's Amended Complaint should be dismissed because (1) he failed to exhaust his administrative remedies and (2) the APA does not place notice and comment requirements on each decision a prison warden makes to implement a BOP policy.  With regard to Plaintiff's constitutional claim, smokers are not a constitutionally protected class and the BOP has demonstrated a rational connection between 28 C.F.R. § 551.162(b)(2) and the choice to institute the Initiative under the highly deferential arbitrary and capricious standard.  For the reasons more fully explained below, Plaintiff's Amended Complaint should be dismissed with prejudice and his motion for summary judgment should be denied.

## ARGUMENT

### I. Standard of Review

#### A. Summary Judgment

Pursuant to Rule 56 of the Fed. R. Civ. P., summary judgment "shall be rendered" if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that this no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The party adverse to summary judgment must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The United States Supreme Court has recognized that "summary judgment is . . . not a disfavored procedural shortcut, but . . . an integral part of the Federal Rules as a whole."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986); *see also Williams v. Verizon Washington D.C., Inc.,* 266 F. Supp.2d 107, 116 (D.D.C. 2003).

In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of

the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *See Williams,* 266 F. Supp.2d at 107 (citing *Washington Post Co. v. U.S. Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.D. Cir. 1989). Where the nonmovant bears the burden of proof, however, the nonmovant must not rely on conclusory allegations, but must present specific facts from which a reasonable jury could find in the nonmovant's favor. *See id.* Thus, to defeat summary judgment, a plaintiff must establish more than the "mere scintilla of evidence" in support of its position. *Bryant v. R.L. Brownlee,* 265 F. Supp.2d 52, 57 (D.D.C. 2003); *Bush v. Engleman,* 266 F. Supp.2d 97, 102 (D.D.C. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*.

  B. <u>Failure to State a Claim</u>

  When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether the plaintiff has alleged sufficient facts in his complaint to state a cause of action. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court must accept all well-pleaded facts as true. *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). If, after reviewing the complaint, the Court finds "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the Court must dismiss the complaint. *Conley*, 355 U.S. 45-46. Generally Speaking, the Court should not consider matters beyond the pleadings without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6).

## II. **Plaintiff Failed to Exhaust His Administrative Remedies.**

Plaintiff's Amended Complaint should be dismissed because he failed to exhaust all available administrative remedies. The APA states that an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court is subject to judicial review" but that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. To this end, the Supreme Court has ruled that "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). However, the Prison Litigation Reform Act ("PLRA") provides, that "No action shall be brought with respect to prison conditions under section 1983 of this title or any *Federal law*, by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

Moreover, the Supreme Court has ruled that proper exhaustion of administrative remedies, as required by the PLRA, is necessary, *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006), because it protects administrative agency authority by giving an agency the opportunity to correct its own mistakes before being called into federal court, discourages disregard for an agency's procedures, and promotes efficiency. *Id.* at 2385.

Here, Plaintiff complains about conditions of his confinement, as they may be impacted by the TFI. Specifically, Plaintiff invites the Court to review, pursuant to the APA, whether the BOP must engage in notice and comment rulemaking before it makes the pertinent changes to

9

his conditions of confinement.  As a result, Plaintiff was obliged to exhaust all available administrative remedies before bringing this action in federal court.  The BOP's regulations on the Administrative Remedy Program, as set out in 28 C.F.R. § 542.10, *et seq*., provide a process for administrative remedies which entails an informal resolution attempt, a formal filing of a request for an Administrative Remedy, a response from the Warden at the institution level, and formal appeals to the Regional and Central Office levels in turn.  Van Vandivier Declaration ("Vandivier Decl.") ¶ 2.

Until a prisoner has appealed through all three levels, that prisoner has not exhausted all available administrative remedies provided by the BOP.  *See* 28 C.F.R. § 542.15(a).  Computer records from the BOP's SENTRY system, which is used to track inmates' administrative remedy filings and appeals, reflect that Plaintiff has not submitted any Requests for Administrative Remedy or appealed any responses to requests as of July 28, 2006.  Vandivier Decl. ¶¶ 3-4.  As a result, Plaintiff has not exhausted all available administrative remedies.  Vandivier Decl. at ¶ 5.  Had all available administrative remedies been exhausted, the BOP may have been able to resolve the matter internally and the Court's precious resources might have been saved.  Consequently, Plaintiff's Amended Complaint should be dismissed for failing to exhaust available administrative remedies.

### III. Warden Drew Did Not Violate the APA When He Implemented the Tobacco Free Initiative.

The APA requires that before an agency promulgates "legislative rules or regulations," it must first provide all interested parties with notice of the proposed rule, the legal authority under which the rule is proposed, and it must allow the interested parties to comment and participate in the rulemaking process.  *See* 5 U.S.C. §§ 553(b) and (c).  The subsection of the

APA requiring notice and comment prior to promulgation of "legislative rules or regulations," however, does not apply to the "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice[.]" 5 U.S.C. §553(b)(A).  The APA does not define "interpretative rule" or "general statements of policy."  However, courts have held that the basic distinction between interpretive rules and legislative rules is that the latter create rights and obligations that are "not already outlined in the statute itself," *Guernsey Memorial Hospital*, 514 U.S. at 99 (internal quotations omitted); *see Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997).  More generally, "internal agency guideline[s]," are "not subject to the rigors of the [APA], including public notice and comment."  *Phillips v. Hawk*, No. 98-5513 (D.C. Cir., April 14, 1999) 1999 WL 32548 (citing *Jacks v. Crabtree*, 114 F.3d 983, 985 n.1 (9th Cir. 1997), *cert. denied*, 523 U.S. 1009 (1998)).

      The BOP internal agency policy that addresses smoking in BOP facilities is also consistent with and follows the rules published at 28 C.F.R. §551.160, *et seq*.  Those rules, in pertinent part, remain in tact, as outline above.  Indeed, those rules were published and were subject to comments by all interested parties in March 2004.  *See* 69 FR 13735-02, 2204 WL 578669, at *13735 (March 24, 2004).  attached hereto as Exh. 3, for ease of reference.  28 C.F.R. § 551.162(b)(2),[3] allows a warden, "with the Regional Director's concurrence, [to] choose not to designate smoking areas for general use."  During the notice and comment period, several commentators "suggested that all tobacco products be banned and no tobacco be sold in federal prisons."  *Id.* at *13736.  The BOP's responsive discussion stated that:

---

[3] Plaintiff incorrectly refers to this section as 28 C.F.R. § 551.162(2).

> By further allowing the Warden the discretion not to designate any smoking areas for general use if the Regional Director concurs, the Bureau is essentially adopting the recommendations of several commenters. If an institution did not have designated smoking areas for general use, that institution's commissary would not have corresponding tobacco products available for sale.

*Id.* Plaintiff could have commented and participated in the rulemaking process while 28 C.F.R. § 551 was published for comment but he did not.

The BOP's program statements are internal agency guidelines and interpretations of its statutory and regulatory provisions, that is, they are internal agency statements of explanation that are consistent with regulations they clarify and largely mimic. *See Parson v. Pitzer*, 149 F.3d 734, 738 (7th Cir. 1998). Such policy statements are not substantive rules, but rather interpretative statements of position, circulated within an agency to provide administrative guidance. Accordingly they are not subject to APA rulemaking requirements. *See Pelissero v. Thompson*, 170 F.3d 442, 447 (4th Cir. 1999). Under 5 U.S.C. §553(b)(A), formal rulemaking does not apply to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.

Here, in March 2004, pursuant to the above-referenced regulations, the BOP issued the Program Statement. (Exh. 2). This Program Statement became effective on July 15, 2004, and it states:

> Purpose and Scope §551.160. To advance towards becoming a clean air environment and to protect the health and safety of staff and inmates, the Bureau of Prisons will restrict areas and circumstances where smoking is permitted.

Exh. 2, Program Statement at 1. The Program Statement goes on to explain:

12

>       Designated Smoking Areas §551.162
> a.    The Warden must designate a smoking area for use in instances where smoking is part of an authorized inmate religious activity.
> b.    (1) The Warden may designate only outdoor smoking areas for general inmate use (that is for smoking which is not part of an authorized religious activity). These smoking areas must be clearly identified.
>       (2) The Warden . . . may choose not to designate smoking areas for general use . . . .

*Id.* at 5.

Warden Drew decided to take option (b)(2) above for the reasons outlined in the Program Statement when he wrote "FCI Talladega is acting on the initiative to become tobacco free." Drew June 24, 2005 Memo (*See* Exh. 1 attached to Compl.). Because this initiative is based on that internal guideline, it is not subject to any of the APA requirements, including any need for notice and comment. Plaintiff has not referenced this Program Statement, but alleges that the Initiative is subject to the APA. On its face, it is clear that the Initiative was based on and is wholly rooted in the Program Statement, which, in turn, simply interprets the regulations that had been published for notice and comment. For example, part 551.162(b)(2), as outlined above in the Program Statement, states that the Warden may choose *not* to designate smoking areas for general use. This language is nearly identical to the language in the regulations. 28 C.F.R. § 551.162(B)(2). The Program Statement is no more than an interpretive rule, interpreting the nearly-identical operative regulation. *Reno v. Koray,* 515 U.S. 50, 61 (1997) (quoting *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99-100 (1995)). As such, it is not subject to the notice and comment provisions of the APA.

Plaintiff now invites this Court to expand the APA to require notice and comment before a Warden decides how to implement properly promulgated BOP regulations and policy because the Warden at FCI Talladega did exactly what the BOP's responsive discussion said he

would when he halted the sale of tobacco products in the prison's commissary after choosing not to designate smoking areas for general use. The APA does not require additional notice and comment prior to the promulgation of interpretative rules, or the exercise of discretion authorized by such duly promulgated rules and the regulations on which they are based.

Moreover, such a requirement would be cumbersome and an imposition on the operations of BOP facilities. For these reasons, the Supreme Court recognized that broad discretionary authority is necessary for Wardens because the administration of a prison is, at best, an extraordinarily difficult undertaking. *Wolff v. McDonnel*, 418 U.S. 539, 566 (1974). For these reasons, Plaintiff's argument that the Warden of FCI Talladega violated the APA in implementing the Initiative fails.

### IV. Warden Drew Did Not Violate 5 U.S.C. § 706 of the APA When He Implemented the Tobacco Free Initiative.

The scope of review that a court has over challenges to agency actions brought under the APA is governed by 5 U.S.C. § 706. Insofar as Plaintiff brings this matter under subsection (2), of that section, his claim must fail.

#### A. Warden Drew Acted Neither Arbitrarily nor Capriciously Under 5 U.S.C. § 706 When He Interpreted 28 C.F.R. § 551.162(b)(2) to Implement the Tobacco Free Initiative.

Pursuant to 5 U.S.C. § 706, a court may hold unlawful and set aside an agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). It is also important to note that courts have found this "arbitrary and capricious" standard applicable to informal agency rule-making procedures and informal agency adjudications. *See Bogner v. U.S. Forest Service*, 851 F.Supp. 1437, 1439 (D.S.D. 1994); and *Sierra Club v. Davies*, 955 F.2d 1188, 1192 n.10 (8th Cir. 1992). However,

the court's task is to determine whether the agency's decision is "within the bounds of reasoned decision making" by determining whether the agency "has considered the relevant factors and articulated a rational connection between the facts found and the choice made," *Balt. Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983), and not to substitute its judgment for that of the agency because the ultimate standard is a narrow one. *Presido Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1160 (9th Cir. 1998) (quoting *W. Radio Services Co. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996)). "This highly deferential standard of review presumes 'agency action to be valid.'" *Int'l Fabricare Inst. v. EPA*, 972 F.2d 384, 389 (D.C. Cir. 1992) (quoting *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976) (en banc), cert. denied, 426 U.S. 941 (1976)). Under this standard, an agency decision is arbitrary and capricious only if the agency:

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could be ascribed to a difference in view or the product of agency expertise.

*O'Keeffe's, Inc. v. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9 Cir. 1996) (quoting *Motor Vehicle Mfrs. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

Here, the Warden's decision to institute the Initiative and to stop selling tobacco products in the prison's commissary satisfies this standard. The obvious health and safety related reasons for instituting a smoking ban that were considered when 28 C.F.R. § 551.160 was promulgated provide sufficient explanation. *See e.g.*, Exh. 3, at 1, ("We intend this amendment to promote a clean air environment and to protect the health and safety of staff and inmate.") The Warden acted to implement that program exercising discretion he was accorded under the

regulation in light of his expertise with the individual institution he supervises. Plaintiff's argument that 28 C.F.R. § 551.160, *et seq.*, contains nothing that allows the warden to ban tobacco products outright is too exacting. *See* Plaintiff's Response to Defendant's Motion to Dismiss at 3. Nothing in the regulation requires the Warden, in rendering his interpretation of the regulation, to ask for notice and comment before selecting the option not to designate smoking areas.[4] 28 C.F.R. § 551.162(b)(2) allows a warden to choose not to designate smoking areas for general use. Further, Plaintiff's argument that a prison has to continue to sell tobacco products in the commissary even if the Warden chooses not to designate any smoking areas is illogical because it is unrealistic to believe that inmates like Plaintiff, who describes himself as a "30 year smoker," who is "suffer[ing] mental and physical withdrawal from a 30 year smoking habit because he is unable to purchase tobacco products from the prison commissary," *(see* Plaintiff's Reply p. 2), would not try to smoke tobacco if they possessed it. Accordingly, to sell tobacco but not authorize its use would be tantamount to inviting rule-breaking.

For these same reasons, Plaintiff's contention that smokeless tobacco should not be removed from sale at the commissary is also moot because smoking is defined in 28 C.F.R. § 551.161 as "carrying or inhaling a lighted cigar, cigarette, pipe, or other lighted tobacco products" and not by whether or not the tobacco emits smoke. For these reasons, the Warden chose to stop selling tobacco products in the commissary because it was the most effective and reasonable method of implementing 28 C.F.R. § 551.162(b)(2) in FCI Talladega. Consequently,

---

[4] Plaintiff also references 28 U.S.C. § 551.163 to argue that the Initiative conflicts with this subsection of the Code of Federal Regulations, rendering the latter unconstitutional. *See* Amended Compl. ¶ 14. 28 U.S.C. § 551.163 was withdrawn in 2005 and was not operative during the time relevant to this case. *See* Exh. 3 at 13737.

Plaintiff's argument that the Court should find the implementation of the Initiative to have been arbitrary and capricious under 5 U.S.C. § 706(2)(A) is without merit.

### B. The Warden Did Not Violate 5 U.S.C. § 706 by Acting Contrary to the Fifth Amendment of the Constitution When He Implemented the Tobacco Free Initiative.

A court may hold unlawful and set aside an agency action found to be "contrary to constitutional right, power, privilege or immunity . . . ." 5 U.S.C. § 706(2)(B). However, Plaintiff here fails to assert an actual constitutional right that may have been violated by the Initiative under the Due Process Clause of the Fifth Amendment. "While it is true that Smoking Bans do single out a particular class of persons and place some greater burdens on their activities, this circumstance alone is insufficient to render the governmental action violative of the Equal Protection Clause. *NYC C.L.A.S.H. v. City of New York*, 315 F.Supp. 2d 461, 482 (S.D.N.Y. 2004). There is no basis upon which to grant smokers the status of a protected class under the Equal Protection Clause. *Id.* at 492.

Even *if* smokers were members of a constitutionally protected class, Plaintiff would still not have a constitutional claim. In *Price v. Johnson*, 334 U.S. 266, 285 (1948), the Supreme Court explained that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." In *Bell v. Wolfish*, 441 U.S. 520, 554-55 (1979), the Supreme Court ruled that what one warden decides for one institution does not control what can be done by another warden at another institution because there is no "lowest common denominator" standard whereby a practice permitted at one institution must be permitted at others. Consequently, Plaintiff cannot

claim that his rights are being violated simply because prisoners at other prisons can smoke and he can not at FCI Talladega.

When "a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *See Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989) (*quoting Turner v. Safley,* 482 U.S. 78, 89 (1987)). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn,* 112 S.Ct. 2326, 2331-32 (1992).

In *Rodriguez v. Pearce, et al.*, 5 F.3d 589 (9th Cir. 1993), plaintiff, a prisoner, argued that a prison smoking ban impinged on his constitutional rights, thus obligating the defendants (prison officials) to show that the ban was reasonably related to legitimate penological interests. *Harper,* 877 F.2d at 731. The *Rodriguez* court stated that it found "no authority supporting the existence of this right." *Id.* at *3. The court went on to state, "Moreover, even if the smoking ban does impinge on a constitutional right, the ban is reasonably related to the legitimate penological interest of protecting other prisoners from tobacco smoke." *Id.* at *3. Here Plaintiff seems to claim that he has a constitutional right to possess and/or smoke tobacco products. He, as noted by the *Rodriguez* and *Harper* courts, does not. Therefore, Plaintiff's Constitutional claims should be dismissed.

### III. CONCLUSION

Based on the foregoing, the Plaintiff has failed to state a claim upon which relief can be granted, and defendants are entitled to judgment as a matter of law. Accordingly, the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/

KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

/s/

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

/s/

MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-4851

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2006, I caused the foregoing *Motion for Summary Judgment and to Dismiss Plaintiff's Amended Complaint and Opposition to Plaintiff's Motion for Summary Judgment* to be served on plaintiff, postage prepaid, addressed as follows:

**MICHAEL A. SMITH**
**R#10893-022**
**Talladega F.C.I.**
**PMB 1000**
**Talladega, AL 35160**

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 305-4851
(202) 514-8780 (facsimile)